†TOLEDO BOARD OF ED. v. TOLEDO (CITY) FOR USE OF COGLIN.

1. ASSESSMENT BY FRONT FOOT MUST INCLUDE ALL ABUTTING PROPERTY.
    When property is to be assessed by the front foot, or by a special assessment, the statute intends that it shall include all property abutting on the street.

2. SCHOOL PROPERTY NOT EXEMPT FROM ASSESSMENT.
    Property of the board of education is not exempt from special assessments for sewers and sidewalks.

3. JUDGMENT THEREFORE MAY BE ENFORCED BY MANDAMUS.
    And for such a lien the plaintiff would be entitled to a judgment, which might be enforced by mandamus.

---

† This judgment was reversed by the Supreme Court as to the point in paragraph 2 of the syllabus; opinion 48 O. S., 83, 87.

HAYNES, J.

The Supreme Court of this state, in deciding Lima v. Cemetery Assn., 42 O. S., 128, stated this in the syllabus of the case:

"1.   In a general sense, a tax is an assessment, and an assessment is a tax; but there is a well recognized distinction between them, an assessment being confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity, and levied with reference to special benefits to the property assessed.

"2.   A municipal corporation insisting on the right to impose an assessment, should be able to show that such power has been clearly granted to it by statute; but authority being shown, in general terms, to make the assessment, whoever insists that his property is exempted from the burden will be required to support his claim by a provision equally clear.

"3.   An incorporated cemetery association is not relieved from an assessment for a street improvement by a statutory provision exempting its lands from taxation, such exemption being regarded as confined to taxes as distinguished from local assessments.

"4.   While the lands of an incorporated cemetery association, so far as exempted, cannot be sold to pay an assessment for the improvement of a street, the municipal corporation may enforce the assessment by such remedies as the statute and courts of equity afford."

Now the matter of assessments, of course, is a matter that is governed by statute in the state of Ohio, and to the statutes we look for our authority—for the authority of the municipal corporation—to make the assessment.   In chapter 4, under the head of "Assessments," sec. 2262, Rev. Stat., provides as follows:

"The council shall, when in its opinion necessary, and also when it becomes its duty, levy and assess, upon the general tax list, an assessment on all taxable, real and personal property in the corporation, for the payment of the cost and repair of the following improvements, including the cost of the necessary real estate therefor that is, for public halls and necessary offices, structures for the fire department, waterworks, market houses and spaces; cemeteries, parks, infirmaries, hospitals, gas works, prisons, houses of refuge and correction, work houses, public privies and urinals, wharves and landings on navigable rivers, levees, and embankments."

Those are required to be paid out of the general funds of the city by moneys collected upon an assessment.

Section 2263, Rev. Stat., provides as follows:

"When the corporation appropriates, or otherwise acquires, lots or lands for the purpose of laying off, opening, extending, straightening or widening a street, alley, or other public highway, or is possessed of property which it desires to improve for street purposes, the council may assess the cost and expenses of such appropriation or acquisition, and of the improvement, or of either, or of any part of either, upon the general tax list, in which case the same shall be assessed upon all the taxable real and personal property in the corporation."

So far as I have been able to find, the authority for making the improvements is included in that simple phrase "and of the improvement" of the streets, and it is there authorized to raise the money by taxation upon general taxes, and pay it out of the general fund.

Section 2264 Rev. Stat., provides as follows:

"In the cases provided for in the last section, the council may decline to assess the cost and expenses therein mentioned, or any part thereof, except as hereinafter mentioned, on the general tax list, in which event such cost and expenses, or any part thereof which may not be so assessed on the general tax list, shall be assessed by the council on the abutting, and such adjacent and contiguous or other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the feet front of the property abutting upon the improvement, as the council, by ordinance setting forth specifically the loss and lands to be assessed, may determine, before the improvement is made, and in the manner, and subject to the restrictions, herein contained."

Now it is in that section that they have the authority to assess the property by the feet front, or make these special assessments that are made by them. And the power is general, and full, and complete in regard to all property that is abutting on the street.

There are some other statutes that have a further bearing on this question, we think.

Section 2274, Rev. Stat., provides as follows:

"That when the council of a city, except in cities of the first and third grades of the first class, and in cities of the first grade of the second class, determines to grade, pave, sewer, or otherwise improve a street, alley, or other public highway, and the improvement crosses or intersects another street, alley, or public highway, the council shall levy and assess a tax, in addition to that specified in the last section, upon the general tax list of all the taxable real and personal property in the corporation, for the estimated cost and expense of so much of the improvement as may be included in the crossing or intersection of such street, alley, or highway, which amount the corporation clerk shall certify to the county auditor, and the same shall be enforced against such real and personal property as other taxes are enforced and collected;  *  *  *  "

That is for the purpose of providing for the payment for the crossing or intersection of streets, and it really takes out so much of that property from being assessed by the foot front, and authorizes it to be assessed upon the general tax duplicate.

Section 2275, Rev. Stat., provides as follows:

"For the purposes of assessment, a city of the first grade of the first class shall in all cases be considered a property owner as to the intersections, and another property belonging to the corporation abutting on the street or highway, so improved; and the assessment chargeable to the corporation, together with at least one-fiftieth part of all costs and expenses, as provided for in sec. 2273, shall be included in any bonds issued for the improvement, and be paid by it in like manner as by other property owners."

This really enlarges, so to speak, the liability of the city of Cincinnati, and imposes the liability or duty of paying for one-fiftieth part of all the costs and expenses, and having it assessed upon its public property, and to pay the same as other property holders pay.

Section 2276, Rev. Stat., provides as follows:

"When the whole or any portion of an improvement authorized by this title passed by or through a public wharf, market space, park, cemetery, structure for the fire department, water works, school build-

ing, infirmary, market building, workhouse, hospital, house of refuge, gas works, public prison, or any other public structure or public grounds within and belonging to the corporation, the council may authorize the proper proportion of the estimated costs and expenses of the improvement to be certified by the clerk of the corporation to the county auditor, and entered upon the tax list of all the taxable real and personal property in the corporation, and the same shall be collected as other taxes; provided, that in cities of the second grade of the first class, the special assessment for such improvement shall be paid from the fund of the department controlling the property, through or by which the improvement passes.''

That applies of course, to the city of Cleveland, and definitely determines that when any special assessment of that kind is made and placed upon the general duplicate, it shall be paid out of the fund of the department controlling the property which has been assessed.

The statute provides that ''when an assessment is made by a municipal corporation on account of the expense of the opening, improvement or repair of a street or other public way, or of the construction or improvement of a sewer or drain, and such assessment is levied upon the real estate abutting upon such street or way, or that is specially benefitted by the work on account of which the assessment is made, and any portion of such real estate is owned by the state of Ohio, the state shall be liable for an equitable portion of such expense, which shall be ascertained as hereinafter provided, and assessed and paid accordingly.'' And it goes on and provides by several sections for paying and ascertaining the amount, and, in some instances, agreeing with the parties as to what the amount shall be.

From these, and from the general scope and tenor of the statutes in regard to assessments, it seems to us very clear that when property is to be assessed according to the foot front, or by a special assessment, that the statute intends that it shall include all property that is abutting on the street. There is no exemption made. Provision is made for the payment, at least by some of the cities of the general provision, which provides that the owners shall pay all the taxes; but it is required of the city that it shall pay for its property. The original section governing cities of the second class does not require—I do not find any declaration in words that it requires—that a city shall pay the assessment for the public property along and abutting on the street. That must fall, I suppose, if at all, within the general provision that the improvement shall be paid for by the owner of the abutting property. But the statute provides that even the state of Ohio shall be liable for its property upon an assessment. It provides for payment by it; that the assessment shall be paid by the state; and it is paid by the state, which is the owner of the property, the same as by the other owners.

That brings us to the second branch of the question; that is, whether there are any statutes that exempt the property of the board of education from the payment of these special assessments, that authorize it to be made against its property.

The first ground upon which, of course, the exemption is placed, is largely upon the ground of public policy, as derived from these various statutes; statutes declaring and defining the purposes for which school property shall be held and used. Commencing now with the school law; it provides, first, in sec. 3972, Rev. Stat., that—

"All property, real or personal, which has heretofore vested in and is now held by any board of education, or the council of any municipal corporation, for the use of public or common schools in any district, is hereby vested in the board of education provided for in this title, having under this title jurisdiction and control of the schools in such district."

Provision is also made for school districts in sec. 3885, Rev. Stat., as follows:

"The state is hereby divided into school districts, to be styled respectively city districts of the first grade of the first class, city districts of the second grade of the first class, city districts of the first class, city districts of the second class, village districts, special districts, and township districts."

Section 3886, Rev. Stat., provides as follows:

"Each city having a population of 10,000 or more, including the territory attached to it for school purposes, and excluding the territory within its corporate limits detached for school purposes, shall constitute a school district, to be styled a city district of the first class."

So that while the limits of the district jurisdiction of that board of education of a city may be co-existent with the city limits, it does not necessarily follow that it is so; it may be much larger or it may be much smaller.

I pause here to say that I think a good deal of the trouble that we are having here has come from the fact that sometime in the seventies— I don't remember the exact year—the title of the school property in this state, in most of the cities, perhaps, was vested in the city council for the use of the common schools; and if that were the case today, there would be no trouble about this matter, because it would be governed the same as all other public property the title of which is vested in the city of Toledo, and the assessments made in the same manner as it is put on other public property. But for some reason the legislature saw fit, in 70 O. L., 205, to make this provision:

"All property, real or personal, which has heretofore vested in and is now held by any board of education, or town or city council, for the use of public or common schools in any district, is hereby vested in the board of education provided for in this act, having under this act jurisdiction and control of the schools in such district."

By the original law under which the board was organized in this city, which was the law of 1849, the title was vested in the common council, and it remained so until the year 1873. So that now we have the district, we have the location of the title to the property, and we come now to the power to levy taxes on a board of education.

Section 3958, Rev. Stat., provides as follows:

"Each board of education shall, annually, at a regular or special meeting, to be held between the third Monday in April and the first Monday in June, determine by estimate, as nearly as practicable, the entire amount of money necessary to be levied as contingent fund, for the continuance of the school or schools of the district after the state funds are exhausted, to purchase sites for schoolhouses, to erect, purchase, lease, repair and furnish schoolhouses, and build additions thereto, and for other school expenses."

Now it would seem that the state fund is to be used for schools, and that the city has the right to levy a tax for the continuance of the school or schools of the district after the state funds are exhausted, and to purchase sites for schoolhouses, to erect, purchase lots for school-

houses, repair and furnish schoolhouses, and build additions thereto, and for other school expenses. Section 3959, Rev. Stat., limits the amounts of the taxation for each particular year.

Section 3973, Rev. Stat., provides as follows:

"All property, real or personal, vested in any board of education, shall be exempt from tax, and from sale on execution, or other writ or order in the nature of an execution."

Now I believe that I have read all the statutes that bear on this question, so far as they were cited, and so far as we know, that are applicable to this question; and the question is, whether, under those statutes, the property, on the grounds of public policy, shall be held to be exempt from an assessment for the improvement of streets or for the building of sewers.

That the property that is purchased with these moneys, which is held by the board of education, is to be held for that especial purpose— for the purpose of having schools thereon for the education of the youth of the school district—I have no question. Indeed, the Supreme Court of the state have, under the statute, held that where a school board undertook to let to a private person for use only for a period of time during which there were no general schools in session—that is to say, during the vacation in the schools—one of the school buildings, that the board had no right to do that, and that such a lease was illegal; and for the reason that the schoolhouses should be used only for the purpose of educating the youth thereof, and that it should be open, free of all expense, to all the children of the district who come within the ages of six 'and twenty-one that were proper to attend the public schools. So that there is no question but what the policy of the state is to guard jealously the schools, the school funds and school property, and to hold that it is vested in the boards of education in trust, and that it cannot be turned aside from the purposes for which it is held and used for any other purpose.

The exemption of the property on the ground of public policy is a question which has impressed itself very much on our minds, and has been very much discussed by us. It is a question that is entitled to great weight. The proposition that the property is not to be sold upon any order of sale or execution—that the property is to be entirely exempt from sale—would seem almost to enjoin that the public authorities should not be authorized to take any steps to create a lien upon it, which would be the first step towards authorizing a sale; and that is a view of the case that has been a great deal of weight with us. But we are of opinion that, after an examination of these authorities, at least for the purposes of a public sewer, or for the purpose of a sidewalk, the public policy does not exempt the board of education from the duty of paying these special assessments. The case that I have already cited, Lima v. Cemetery Assn., *supra*, has some hearing upon that question. There is no question but what the general policy of the state is, as is shown by these statutes, to hold that these cemeteries shall be exempt from execution. That is what the court say about it. It is provided that the association "may hold not exceeding 100 acres of land, which shall be exempt from execution, from taxation, and from being appropriated to any other public purpose, if used exclusively for burial purposes, and in no wise with a view to profit." Certainly there is no more rational, or just, or right rule than that the place where the dead are buried shall always be exempt from being sold upon execution, or upon an order of

sale, or diverted to any other use than that to which it has been placed by the owners of the property, to-wit: as a burial place for the dead. The court say:

"It does not appear how much land this association has, but let it be assumed for the present that the quantity is less than one hundred acres. We agree that this exemption is to be taken in its most comprehensive sense, and hence there cannot be a sale of such lands under any legal process whatever. In view of this it has been thought that Louisville v. Nevin, (*supra,* s. c., 19 Am. R., 78), is an authority for holding that the exemption defeats this assessment. This was an action to enforce an assessment on a lot in Jefferson street, Louisville, for regrading and repaving the sidewalk along the front of the lot. The judge delivering the opinion stated the fact to be, that 'the lot was conveyed to the city in 1834, to be held in trust for the use of the Roman Catholic congregation in Louisville, as a burying ground, and has been filled with graves for more than twenty years, and has never been used since 1834 for any other purpose than a graveyard; and it is admitted that no revenue is derived from it, and that the Rt. Rev. Bishop McClosky, who now holds the title as trustee, has no funds in his hands belonging to the trust with which to pay the assessment.' The legislature had not granted authority to remove the bodies, nor had the city assumed to exercise such authority, and the court held that there was no authority to enforce the assessment in that suit. And see Matter of Mayor, 11 Johns., 77, and Albany Street, 11 Wend., 150. But here, for aught that appears in the record, the association has funds to pay the assessment, and indeed for aught that appears it has lands not occupied by graves exceeding one hundred acres in quantity. It does not appear that the association is without the means to pay the assessment, and certainly we could not assume that it will remain without funds. Although the association, is not strictly one for profit, nevertheless it is empowered by the statute to do, at its own expense, not only the very work for which it is here in part assessed, but it may improve and ornament its grounds in such way as to its officers may seem proper. While the cemetery lands, assuming them to be within the limitation, cannot be sold on any legal process, we think the city may, nevertheless, be able to collect the assessment, if indeed occasion should arise for resorting to further proceedings in this case; for the statute plainly authorizes proceedings both at law and in equity, secs. 2286, 2287, Rev. Stat., and payment, if not voluntarily made, could doubtless be secured by the appointment of a receiver, by sequestration, or by such other appropriate remedy as equity may afford (2 Dillon's Municipal Corporations, sec. 822), without in any way disturbing the resting place of those reposing in "the city of the dead."

Now while, of course, this is not a parallel case, because that to acertain extent is private property, and they seem to have an income arising from the sale of lots or from the permission that is given to parties to bury, nevertheless, they do hold that the mere fact that it is exempt from execution does not exempt it from being made the subject of special assessment; does not preclude the city from making this assessment against the property by the foot front or otherwise, the same as it would against the other property. Indeed, it avers that all property abutting on the street is to be included in the assessment, when the assessment is made. The fact upon which that Louisville case was decided is one that is worthy of consideration; and that is, that there was no fund at that time in the hands of the bishop of that diocese, in whom

was vested the legal title of the property, with which he could pay an assessment. The same argument was used by the Supreme Court in the case of Finch v. Board of Education, a case that went up from this county, in which the firm of which I was a member and Judge Scribner were concerned. That was a suit brought by a pupil to collect for an injury that she had received by falling into a well, which was left, as it was alleged, uncovered by the board of education. The court held that the board of education was not liable; and the only ground upon which they held that was, that the board of education had no fund that was provided by statute for the payment of that class of claims.

But can it be said that this board of education is without funds? That is a matter that has received very careful consideration, and we are inclined to the opinion that we cannot say that it has no fund applicable to this class of indebtedness. It is a corporation. It is capable of suing and being sued. It has the power of taxation. It is authorized to levy money for the purpose of continuing the schools after the state funds are exhausted, for the purchase of sites for schools, to erect, purchase, lease, repair, and furnish schoolhouses and build additions thereto; and for all other school expenses. Take the first case that we had: Isn't a sewer a proper school expense in the erection of a schoolhouse? Indeed, the moment you lay your foundation for a schoolhouse, isn't it proper and right, and isn't it incumbent on the board of education that they shall have proper drainage for the building, and for the urinals and water closets that must of necessity be constructed and be largely used in such buildings? It seems to us from the phraseology and the very terms of this statute, that they would have the right to oppropriate from the funds in their hands money to build a sewer of that kind; and that they would also have the right to use that money for the purpose of paying for a sewer that is ordered by the public authorities, and that the assessment which is made upon their property of so much a foot front as a local assessment for that particular sewer could be properly paid by them. You will remember that the tax that is to be levied upon that property for a sewer is by the statute confined to simply and purely a local tax for the sewer, and is limited to a certain amount, and not a very large amount.

So, too, you might take the high school building here. Suppose this was an assessment in front of that. They build sidewalks from the front door to the street, and there is no question but what they have a right to build sidewalks of that kind as a part of the school building, for the use of the school building. Is there any reason why they should not build a sidewalk along the street in front of the lot to enable the pupils to get to school and go from it. It seems to us that it comes clearly within the classification of school purposes for which money may be raised and used, and that it would be no misappropriation for it to use funds for that purpose.

The assessments for paving streets, or for opening streets as they do sometimes for a long distance from any particular lot, whether in a case of that kind the board of education would be liable, is a question that we do not determine to-day, and do not wish to determine. However, I will state that a little further on.

We have been cited to some authorities that have a bearing on this question. The first we have is a case from Connecticut. It has been commented upon as a leading case and an important case, and we recognize it as such—Hartford v. West Middle District, 45 Conn., 462. It

Board of Education v. Toledo.

was decided in 1878. It was an action for debt against an incorporated school district. The action was brought to the superior court, and tried to the court, who made a finding of facts, and rendered judgment for the plaintiffs. The case is stated in the opinion, which is not very long. I will read it:

"The principal question presented by this record is, whether a school district is liable to assessment for benefits to its property by the laying out of a street or highway. If this question is determined, as we think it must be, in favor of the defendants in this case, a consideration of the other questions made become unnecessary.

"The superior court finds that the assessment was made upon the defendants, because they were the owners of property in said city, which in the opinion of the board of street commissioners was specially benefitted by the laying out of said new highway or street. Said property consisted of a lot of land, with a schoolhouse thereon, which lands the defendants purchased in 1872, as a site for said schoolhouse, at a cost of $35,000, and took a deed therefor in their corporate name, and in 1873 erected said schoolhouse, at an expense of $118,844. The defendants used the whole of said land for school district purposes, and cannot maintain the public schools, which they are required by law to maintain, and provided them with sufficient and convenient accommodations without it. The said schoolhouse was designed, built and fitted up for school purposes only. For those purposes exclusively it has been used ever since it was completed, and it is adapted to no other purpose or use. Moreover it is centrally located and accommodates all the inhabitants of the district.

"This was the condition and character of the property at the time the assessment was made, and at the time the street was laid out. How could the defendants, as a school district, be benefited by the laying out of the street? The assessment was undoubtedly made upon the idea that the intrinsic value of the property was increased, but, if that were so as a matter of fact, does it follow that it was increased in value as school district property, bought and used solely for school purposes, and did the district, or could it from the nature of things, derive any immediate, direct or special benefit from the laying out of the street? We are unable to see how the district as a corporation could be so benefited, or that their property was rendered any more valuable for the purpose for which they used it, and for which they must continue to use it, if not for all time, at least for a very long period.

"To render the assessment of benefits legal and valid, it must appear that the benefit is direct and immediate, and not contingent and remote. (Citing numerous authorities.)

"We think there is manifest error in the judgment of the superior court, and it must be reversed."

We think that decision has a very healthy sound, and lays down law that on the facts of that case is worthy of a very high consideration; but we hardly imagine that the Supreme Court of the state of Connecticut would hold that a sewer passing by a school building, into which the urinals and water closets of the school building were to run, and was to take off all that impurity from the school property, would not be a benefit to the school property. It would seem that the case they had was where a street was laid out in the neighborhood. Whether it came right near to it, or how close, is not disclosed in the record. And even if it

went by the school, we.can see very well why they might conclude that the property was not benefited.

So, too, as we have already said, a sidewalk in front of a building to enable the scholars to reach the school house, it is certainly a benefit to the property, because we must as a general rule, admit it to be a necessity. So we.think that the Connecticut case should not be an authority authorizing us to hold that this assessment was not legal, in this case.

The case Sioux City v. School District, 55 Iowa, 150, was a case that was decided by a good strong court:

"The plaintiff is a corporation existing under the general incorporation law. The defendant is a school district, and the owner of certain real estate within the city limits which is used solely for school purposes. The city council determined that a certain sidewalk in front of said real estate should be repaired. The city furnished the material and caused the same to be done, and seeks in this action to recover therefor. Trial to the court, and judgment for the plaintiff, but the court refused to make an order for the sale of the real estate. The defendant appeals.

"Seevers, J.:—The general incorporation statute provides:

"First—That cities have the power to construct and repair sidewalks, and levy a special tax on the lots and parcels of land fronting on the streets thus improved to pay therefor.

"Second—They may by ordinance determine the mode such charge shall be assessed.

"Third—Such assessment is made a personal charge against the owner, and also a lien on the real estate, which may be collected and the lien enforced by a proceeding in law or equity.

"Fourth—Cities may, by ordinance, if they so elect, cause such special tax to be certified to the county auditor to the end it may be collected as are other taxes. Code, secs. 478, 479, 481.

"Under the authority conferred the city passed the requisite ordinances, and among other things, provided for the certification of such special taxes to the county auditor, and their collection as are other taxes.

"No complaint is made of the mode of assessment in any respect, and counsel for the appellant state the question to be determined to be 'whether school property, used for school purposes only, is subject to any tax levy, charge or assessment, or expense for building sidewalks adjacent to the same, by the city, and whether defendant is liable to pay the same.' In relation thereto we have to say:

"1. The statute designates the assessment made in this case as a special tax, and it will be so regarded. It is however, a tax or charge imposed because of a special benefit, and therefore, distinguishable from ordinary taxes which are imposed for the support of the government or municipality. The defendant was under obligation to provide not only schools and schoolhouses, but reasonably sufficient ways to reach the same. It is but reasonable, we think, in an incorporated city or town, a school district should provide sidewalks in front of its property, or pay therefor, in all cases where the city required or constructs the same in pursuance of statutory authority. As we understand, the defendant claims, if this be conceded, the property 'of the defendant has been exempted from taxation of every character.

"The statute relied on is found in title 6 of the Code, which relates exclusively to revenue or ordinary taxes. It is therein provided that the following classes of property 'are not to be taxed, and they may be

omitted from the assessments herein required * * * the property of a county, township, city, incorporated town or school district, when devoted entirely to public use, and not held for pecuniary profit'. Code, sec., 797.

"The special tax assessed by cities for the construction of sidewalks is not assessed under title 6 of the Code, but under title 4, chapter 10, which relates to cities and incorporated towns.

"Taxation is the rule and exemption on the exception, and, therefore, strict construction of the statute under which the exemption is claimed is the rule. Trustees of Griswold College v. State, 46 Iowa, 275; Cooley on Taxation, 146.

"It will be observed the statute provides the property is not to be taxed, and may be omitted from the assessments 'Herein required.' Clearly, we think, this has reference only to the assessments referred to in said title. From all taxes therein required to be assessed the designated property is to be exempted. It appears to us, under the provisions of title 4 of the Code, this special tax is clearly authorized, is general, and applies to all persons and property coming within its provisions. If the general assembly had intended to exempt the property of school districts from this special tax, and throw the burden on the municipality, it is fair to presume it would have so indicated in clear and explicit terms.

"The words not to be taxed are not alone to be considered, but must be read in connection with the residue of the statute, and its object, scope and intent considered. So doing we have no hesitation in saying the exemption relates only to the taxes contemplated in title 6 of the Code, or such as are assessed for ordinary purposes, and to which all persons and property are subject unless specially exempt. This view is sustained, to say the least, by the decided weight of authority.

"2. The court refused to order a sale of the real estate. Of this the defendant does not complain. We are not called on to determine whether the judgment can be enforced, but it is probable counsel will be able, if necessary, to find a way to accomplish such a result.

"It is competent for the general assembly to provide that a special tax of this character may be enforced by an action in the courts. Cooley on Taxation, 300.

"The statutes makes the tax a personal charge against the owner, and a lien on the real estate, and it has been held this may be done. Quick v. Burlington, 47 Iowa, 222.

"The personal charge is a debt which may be enforced by a personal action against the owner.

"The power given cities by ordinance to provide for the collection of a special tax, as are other taxes, is cumulative merely, and does not, if adopted, deprive the city of the other remedies provided for the collection of the tax."

So you will see that the court under circumstances very similar to these held that the board of education was liable.

A case was decided in 26 Mo., which also held the law the same as it is held in 55 Iowa.

We are of opinion that while no order of sale of the property may be issued, and doubt, indeed whether we can declare that there is a lien upon the property—and inasmuch as a lien only remains for a period of two years in any event it don't amount to a great deal—still, upon a proper statement of facts in the petition, that the plaintiff would be entitled to a judgment, and the board of education would be authorized to

pay it, if they had funds in their hands. And we think if it was necessary, if there was any doubt about the matter—I presume there would not be here—that that judgment might be enforced by proceedings in mandamus. It is true that it is going to take—perhaps may take—several thousand dollars out of the funds of the city. It is true also, that the moneys largely that are raised for this purpose are raised from the citizens of Toledo. It don't make a great deal of difference in the outcome to the citizen whether he is taxed by the board of education of the city of Toledo or the common council. It is true that there is a limitation to the amount which the council may levy, as there is upon the board of education. That simply proves that the extent to which the schools may be run is not illimitable; that the board of education have got to provide schoolhouses, and furnish them; and if they have money left to sustain the schools for a certain number of months, it only goes to the number of months that the schools my be run during th year—eight, or nine, or ten. The policy of the state to limit is everywhere expressed in the statutes, and the extent of that limitation is for the legislature and for legislative action.

There are other suggestions bearing upon this question that we have looked at, for instance, if this property was exempt, the expense of it would come upon the whole street; if there was $20,000 paid for an improvement of some particular kind, if this property is exempt, the balance of the street should pay it. That is not the policy of the state, as we understand it. The general policy of the law is that with reference to public buildings the expense of these improvements shall be paid out of the public funds. But if the property of the board of education was exempt, how could they compel the citizen to pay it? I imagine it would be claimed very speedily that the whole cost and expenses should be placed on the street, and if the board of education property was exempt, then the property on the street should pay it. In other words, we think that the part that ought to be assessed must be put on the whole street, or on the board of education.

I have endeavored to indicate the views that we have arrived at, after a very careful examination. I wish to reiterate what I stated in the opening that we don's intend to hold that they are liable for all public improvements. Before we hold them liable to pay assessments for the opening of streets, for the improvement of streets for a long distance, and matters of that kind, we should desire to further examine the question. But we do hold that for sidewalks and for sewers the board of education is properly chargeable with the assessment that has been made—not as a lien upon the property, but the board of education is to pay.